**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 5 2017 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.;
JOSHUA ROBINSON; JOHN-MARTIN GREEN;
INGA BALLARD; and SAMUEL GATES,

               Plaintiffs,

       v.

MARTIN RANKELL, LP[1]; ROBERT RANKELL;
ANASTAS KARAKASIDI; AND FAINA
KARAKASIDI,

               Defendants.

--------------------------------------------------------------X

16 Civ. 5958

**SETTLEMENT AGREEMENT
AND CONSENT DECREE**

       WHEREAS, the Fair Housing Justice Center ("FHJC"), Joshua Robinson, John-Martin Green, Inga Ballard, and Samuel Gates (collectively, "Plaintiffs") filed a Complaint on or about October 27, 2016 against the above-captioned defendants alleging that they violated federal, state, and city fair housing laws; and

       WHEREAS, Defendants Martin Rankell, LP ("Rankell Entity") and Robert Rankell (collectively, the "Rankell Defendants") filed an Answer to the Complaint in which they denied the allegations; and

       WHEREAS, Defendants Anastas Karakasidi and Faina Karakasidi have not appeared in this action; and

       WHEREAS, Plaintiffs and the Rankell Defendants wish voluntarily to resolve the claims raised in the Complaint according to the terms set forth in this Settlement Agreement and

---

[1] The Clerk of Court is directed to amend the caption and substitute "Martin Rankell LP" for "Robert Rankell & Martin Rankell, LP."

Consent Decree (the "Agreement") as a compromise to avoid the cost and uncertainty of litigation; and

WHEREAS, the Rankell Defendants have denied the allegations of wrongdoing and liability alleged in the Complaint and by entering this Agreement do not admit or intend to admit the same; and

WHEREAS, Plaintiffs and the Rankell Defendants have agreed to the terms of this Agreement and jointly request that it be so-ordered by the Court, as indicated by the signatures appearing below, the Court's willingness to so-order this Agreement being a material condition of the parties' willingness to enter into it;

NOW, THEREFORE, it is hereby AGREED by and between Plaintiffs and Rankell Defendants, and the Court hereby ORDERS that:

## I.   TERM AND SCOPE OF AGREEMENT

1.   All obligations under this Agreement, unless otherwise specified, shall: (a) commence within fourteen (14) days from the date this Agreement is so-ordered by the Court and (b) continue for a period of four (4) years from the date this Agreement is so-ordered by the Court (the "Term").

2.   The terms of this Agreement shall apply to the policies and procedures of Rankell Defendants, and the policies, procedures, and operation of the residential rental apartment buildings owned and operated by Rankell Defendants and/or any of the Principal Owners of the Rankell Entity, including, without limitation: 1695 East 21st Street in Midwood, Brooklyn, New York and 1214 Kings Highway in Midwood, Brooklyn, New York.  This list, including any residential rental apartment buildings owned by Rankell Defendants and/or any of the Principal Owners (as defined herein) of the Rankell Entity and not specifically listed in this

Agreement, collectively is referred to herein as the "Buildings." For purposes of this Agreement, a Principal Owner of the Rankell Entity shall be any owner holding an interest greater than 5%.

3.      This Agreement shall be binding on Rankell Defendants and any of their Principal Owners, principals, shareholders, officers, employees, and agents (when acting on behalf of the Rankell Defendants), unless otherwise specified. If any Building covered by this Agreement is sold or transferred during the Term, on closing of such sale or transfer, this Agreement shall immediately cease to apply to such Building, unless the sale is to any of the Principal Owners/members of the Rankell Entity or to any corporations in which the Rankell Defendants or the Principal Owners of the Rankell Entity hold an ownership interest in which case this Agreement shall continue to apply to the Rankell Defendants and/or the Buildings.

## II.   MONETARY RELIEF

4.      Rankell Defendants shall pay Plaintiffs and their attorneys, Cuti Hecker Wang LLP, the total sum of One Hundred Seven Thousand, Five Hundred Dollars ($107,500.00), in four separate installments, in full and final settlement of all of Plaintiffs' claims in the Complaint, including but not limited to damages, attorneys' fees, and costs (the "Settlement Payments"). The Settlement Payments shall be made by check payable to "Cuti Hecker Wang LLP, as attorney for the Fair Housing Justice Center, Joshua Robinson, John-Martin Green, Inga Ballard, and Samuel Gates" and delivered to Cuti Hecker Wang LLP at 305 Broadway, Suite 607, New York, New York 10007. The first installment shall be in the amount of Twenty-Five Thousand Dollars ($25,000.00) and delivered on or before the fourteenth day after the Court so-orders and electronically files the so-ordered copy of this Agreement. The second installment shall be in amount of Twenty-Five Thousand Dollars ($25,000.00) and delivered no later than sixty days after the first installment. The third installment shall be in the

3

amount of Twenty-Five Thousand Dollars ($25,000.00) and delivered no later than sixty days

after the second installment. The fourth and final installment shall be in the amount of Thirty-

Two Thousand, Five Hundred Dollars ($32,500.00) and delivered no later than sixty days after

the third installment.

## III. GENERAL INJUNCTIVE RELIEF

5. Rankell Defendants and their employees and agents (when acting on

behalf of the Rankell Defendants) shall not discriminate against persons on the basis of race or

color regarding the rental of dwellings and housing accommodations in violation of the federal

Fair Housing Act, 42 U.S.C. § 3601 et seq., New York Executive Law § 296, and the New York

City Human Rights Law, New York City Administrative Code § 8-107, in any manner, including

without limitation:

a. Refusing to rent, refusing to negotiate, refusing or failing to provide or offer information about, or otherwise making unavailable, withholding, or denying a dwelling or housing accommodation to persons because of race or color;

b. Representing that any dwelling or housing accommodation is not available for inspection or rental because of a person's race or color when such dwelling or housing accommodation is, in fact, so available, including refusing on the basis of race or color to show apartments that are available to rent;

c. Imposing different terms, conditions, or privileges of rental of a dwelling or housing accommodation because of race or color, including stating different amounts of rent for the same apartment and not providing applications to prospective tenants because of race or color; and

d. Coercing, intimidating, threatening or interfering with any person, in the exercise or enjoyment of, or on account of the person having exercised or enjoyed, or on account of the person having aided or encouraged any other person in the exercise or enjoyment of rights guaranteed by the said federal Fair Housing Act and state and local fair housing laws pertaining to discrimination based on race or color.

4

6.     Rankell Defendants shall apply neutral policies, procedures, requirements, rules and regulations to all persons who inquire about apartments to rent or who submit applications for rent.

## IV.   FAIR HOUSING POLICIES

7.     Rankell Defendants shall adopt the attached equal housing opportunity policy in the form of Exhibit A (the "Policy") and adhere to the Policy throughout the Term. Rankell Defendants shall distribute the Policy to any and all Principal Owners, employees, agents involved in the rental or sale of apartments, or other persons directly involved in showing apartments and/or deciding whether and to whom apartments (for sale or rent) will be shown, as well as any and all members, employees, agents, or other persons directly involved in managing any of the Buildings and/or involved in the process of renting apartments at any of the Buildings, including without limitation any employees, agents, building superintendents, independent contractors, managing agents, brokers and sales associates involved in the rental or sale of apartments, and any and all persons employed in the office of the Rankell Entity.  Each such person shall sign Exhibit B to this Agreement.

8.     Rankell Defendants shall instruct defendants Anastas Karakasidi and Faina Karakasidi (the "Karakasidi Defendants") that they may not show prospective tenants apartments in the Buildings, answer prospective tenants' questions about the availability or monthly rent for apartments in the Building, or furnish any rental applications or other written materials concerning apartments in the Building to prospective tenants.  Rankell Defendants shall instruct the Karakasidi Defendants to advise any prospective tenants with whom they speak to direct any questions or inquiries to Robert Rankell (or a broker designated by Robert Rankell who is trained pursuant to Paragraphs 15-17 below), and to inform any prospective tenant, in

5

sum and substance, that each has no role in the rental of apartments in the Buildings. Rankell

Defendants shall further instruct the Karakasidi Defendants not to treat any tenant or prospective

tenant differently on the basis of race, color, religion, sex, familial status, national origin,

disability, lawful source of income, marital status, domestic partnership status, age, sexual

orientation, alienage or citizenship status, lawful occupation, status as a victim of domestic

violence or status as a victim of sex offenses or stalking, or military status, and otherwise to

follow the policy attached hereto as Exhibit A. Rankell Defendants shall inform the Karakasidi

Defendants verbally and in writing that if they do not follow these instructions, Anastas

Karakasidi shall be terminated for cause.

        9.      Throughout the term of the Agreement, Defendants shall ensure that for

each apartment that they make available for rent in any of the Buildings, an advertisement shall

be posted on the "all apartments" subpage of Craigslist's New York City website

(http://newyork.craigslist.org/aap/) ("Advertisement"), or such other website as shall be

approved by Rankell Defendants and FHJC. Each Advertisement shall include (a) the number of

bedrooms, (b) the amount of the rent, (c) the address of the building in which the apartment is

located, (d) contact information for the person designated to show the apartment (who shall have

been trained pursuant to Paragraphs 15-17 below), and (e) the phrase "Equal Housing

Opportunity" in a large font (at least 4 points larger than the font for the text of the

advertisement). Until the Advertisement is so posted, Rankell Defendants and each of their

principals, agents, and employees shall not inform any prospective applicants in writing or

verbally about the availability of the apartment, shall not show the apartment, and shall not take

any other actions to rent the apartment, except that current tenants shall not be considered

prospective applicants for purposes of this provision. Rankell Defendants shall ensure that for

each apartment that they make available for rent at the Buildings, the Advertisement is posted on

www.craigslist.org, or such other website as shall be approved by Rankell Defendants and FHJC,

as specified above for at least five consecutive days before any decision is made regarding to

which prospective tenant to rent the available apartment.  The Advertisement requirement set

forth in this paragraph shall not apply where a tenant or subtenant residing in any of the

Buildings merely wishes to transfer to a different apartment in the same Building; provided,

however, that the Advertisement requirement set forth in this paragraph shall apply to any

apartment being vacated by any such tenant or subtenant that is made available to rent.  This

obligation does not limit Rankell Defendants or their principals, agents, employees or contractors

from advertising on other websites or in other locations provided: (a) that such advertisements

are consistent with the requirements of this paragraph; (b) that such advertisements are placed in

addition to, and not in lieu of, the Advertisement; and (c) that such advertisements are not

placed, and that an available apartment in the Building is not advertised through any channel,

until the Advertisement first has been posted for five consecutive days as required above.

   10. During the term of this Agreement, Rankell Defendants shall not permit

any rental agent or broker or other person or entity to represent them in connection with the

rental of apartments at the Buildings, and/or to show vacant apartments or find renters for the

Buildings, unless such agent, broker, person, or entity has been trained pursuant to Paragraphs

15-17 below or has received comparable training that is approved by FHJC.

   11. Robert Rankell shall be the final decision-maker with respect to which

prospective tenants are offered a lease for all apartments rented in the Buildings.  Nothing in this

Agreement shall prevent the Rankell Defendants from leaving an apartment vacant for the

purpose of renovating or selling the apartment or the building.  The requirements set forth in

Paragraphs 9, 12 and 13 of this Agreement shall not apply to the building located at 1214 Kings Highway, Brooklyn, New York.

12.     Defendants shall ensure that a sign or notice is posted and displayed prior to advertising or renting any vacant apartment. The sign or notice shall include the name and telephone number of either Robert Rankell or a rental agent or broker responsible for listing and showing apartments who is trained pursuant to Paragraphs 15-17 below and indicate that inquiries about renting an apartment should be directed to the telephone number on the sign or notice. The sign or notice shall be located in each of the Buildings' vestibule that is open to the public or on the front of the exterior of the Buildings as close to the main entrance doors as is practicable, such that it is plainly visible to members of the public who inquire about housing for rent at any of the Buildings. Defendants shall ensure that this sign remains so posted continuously and is promptly replaced if ever removed by a third party.

13.     Rankell Defendants shall ensure that a Housing and Urban Development ("HUD") fair housing poster, HUD Form 928.1, and a New York City Commission on Human Rights Fair Housing Poster, which are attached hereto as Exhibit C and Exhibit D, respectively, are posted and prominently displayed at the Rankell Entity's office and in each Building's vestibule that is open to the public or on the front of the exterior of the Building as close to the main entrance door as is practicable. Defendants shall ensure that these posters remain so posted continuously and are promptly replaced if ever removed by a third party.

14.     Rankell Defendants shall ensure that the following sentences are printed in a readable, legible, and visible manner on their form rental applications given to prospective applicants for apartments in the Buildings and given to prospective applicants who inquire with the Rankell Entity about available apartments:

8

> We do not discriminate on the basis of race, color, national origin, religion, sex, familial status, disability, age, marital status, military status, sexual orientation, gender identity, lawful source of income, alienage/citizenship status, domestic partnership status, lawful occupation, status as a victim of domestic violence or status as a victim of sex offenses or stalking, and any other characteristics protected by law.

## V.   FAIR HOUSING TRAINING

15.    Within thirty (30) days after this Agreement is so-ordered by the Court, Rankell Defendants shall require that fair housing training (the "Training") be provided to all of the following persons:  Robert Rankell; Tina Concettina Deodato; Anastas Karakasidi (if still employed as the superintendent), each of the Buildings' general manager, office manager, secretary, assistants, and all other of its employees or agents; any real estate agents, brokers or salespersons that Defendants intend to use as agents to rent or sell apartments in the Buildings; and all persons who will have direct involvement in the renting of apartments in the Buildings. If any of the persons mentioned in the previous sentence fails to attend the Training, Rankell Defendants shall, in the case of its employees, terminate their employment, and in the case of non-employees, cease doing business with them.  The Training will be conducted by Kevin Cremin at the cost quoted by Plaintiffs to the Rankell Defendants on May 5, 2017, and the cost of the Training shall be paid by the Rankell Defendants.  Rankell Defendants shall be responsible for any rental cost to secure the location for the Training, which shall take place at a reasonably convenient location designated by Rankell Defendants at a suitable business office containing a table and sufficient chairs for the trainer and each trainee.  Rankell Defendants shall use their best efforts to identify at least two (2) dates within the thirty (30) day period during which all of the individuals required to be trained are available.  In the event that the designated or approved trainer is not available to conduct the Training on any of these proposed dates, or if any real

9

estate agent, broker or salesperson that Defendants intend to use as an agent to rent or sell apartments in the Buildings is not available within thirty (30) days, FHJC shall, in its discretion, either (i) designate an alternative trainer to conduct the Training on one of the proposed dates, or (ii) agree to a reasonable extension of the thirty (30) day period. If FHJC elects to extend the thirty (30) day period, Rankell Defendants shall use their best efforts to ensure that the Training takes place as soon as possible.

16.    The Training referenced in the paragraph above shall include information about federal, state, and local fair housing laws as they relate to all aspects of the renting of apartments, as well as instruction on the terms of the Agreement.

17.    The individuals trained shall verify their attendance at the Training in writing. Within ten (10) business days of the date of the Training required by this Agreement, Rankell Defendants shall provide FHJC with a copy of the attendance verifications and the date on which the Training was conducted by sending such verifications via Federal Express or other similar overnight courier to FHJC's primary business address, which currently is 30-30 Northern Blvd #302, Long Island City, New York 11101, to the attention of Fred Freiberg or its then-current Executive Director.

18.    Rankell Defendants shall not permit any rental agent or broker who has not been trained pursuant to Paragraphs 15-17 (or through comparable training approved by FHJC) to represent them in connection with the Buildings. If, during the term of this Agreement, Rankell Defendants wish to use an agent who has not been trained pursuant to Paragraphs 15-17 or received comparable training approved by FHJC to represent them in connection with the Buildings, such agent shall be trained, at Rankell Defendants' expense, by a trainer to be

approved by FHJC, before he or she shall be permitted by Rankell Defendants to represent them in connection with the Buildings.

## VI.   RECORDKEEPING PROVISIONS

19.    Rankell Defendants shall maintain the following records with respect to the Buildings and with respect to responding to inquires at the Rankell Entity about available apartments for rent throughout the term of this Agreement electronically and/or in paper format:

    a.  Signed copies of Exhibits B;

    b.  All rental applications and their attachments, including driver's licenses, passports, or other photograph identification that Rankell Defendants may require and that are submitted to them or to any of their employees, contractors, or agents, together with any information or correspondence with the prospective tenant or the broker or agent handling the application (if applicable) and copies of Advertisements;

    c.  Records detailing how each applicant learned about Rankell Defendants, the relevant Building, and/or the apartment for which he or she applied, whether a real estate broker or agent represented the applicant and/or the Building, and the name and company affiliation of any such real estate broker or agent; and

    d.  Records sufficient to determine whether a rental application was accepted or denied, the date of such acceptance or denial, and the reason for the denial.  Such information may be written and/or stamped on the application or maintained in any reasonable accessible way.

20.    Upon reasonable notice and no more than two times per year, Rankell Defendants shall permit FHJC to inspect and copy the records described in the preceding paragraph, except FHJC shall not inspect or copy social security numbers, tax returns, banking information, or credit reports.

## VII.   DISMISSAL OF COMPLAINT

21.    Within ten (10) days of the date that Rankell Defendants make the final installment of the Settlement Payments contemplated under Paragraph 4 of this Agreement, the

Plaintiffs, by their counsel, shall file a Stipulation of Dismissal providing for dismissal of all claims and defenses by and against Defendants with prejudice.  Provided that Rankell Defendants are in full compliance with and have not breached this Agreement, this action shall be stayed until such time as the Stipulation of Dismissal is filed or, in the event that Rankell Defendants fail to make the Settlement Payments contemplated under Paragraph 4 of this Agreement, until the final installment payment is made; provided, however, that Plaintiffs shall at all times be free to move to enforce the terms of this Agreement.  Except as provided herein, both sides shall bear their own attorneys' fees and costs in this action.

## VIII. RELEASES

22.    In exchange for Rankell Defendants' agreement to the terms set forth above, and conditioned upon Rankell Defendants making the payment required by Paragraph 4 of this Agreement, Plaintiffs hereby release, acquit, and forever discharge with prejudice, but subject to the terms of this Agreement, the Rankell Defendants, and each of their respective heirs, employees, parents, owners, members, partners, shareholders, agents, trustees, board members, insurers, bond holders, attorneys, subsidiaries and affiliated entities, with prejudice, from any and all liability, claims, or rights of action arising from or relating to the allegations in the Complaint filed in this action or which could have been filed in this action, including, but not limited to, claims for costs, expenses, and attorneys' fees.  Nothing in this paragraph shall preclude Plaintiffs from seeking to enforce the terms of this Agreement.

23.    Plaintiffs hereby acknowledge and fully understand that they are releasing all claims, demands, causes of action or liabilities, in law or equity, against Rankell Defendants that they may not know about which arise from or relate to the allegations in the Complaint filed in this action, and that is their intent.  Plaintiffs expressly waive all rights they may have under

12

the law that are intended to prevent unknown claims arising from the allegations in the

Complaint filed in this action from being released and acknowledge that they understand the

significance of doing so. This Agreement, however, is not intended nor should be understood as

limiting Plaintiffs from pursuing any claims that are unwaiveable as a matter of law.

24.     Nothing contained herein shall be deemed to be an admission by Rankell

Defendants that they have in any manner or way violated Plaintiffs' rights, or the rights of any other

person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations or common

law of the United States, the State of New York, or the City of New York.

25.     In exchange for Plaintiffs' agreement to the terms set forth above, Rankell

Defendants hereby release, acquit, and forever discharge Plaintiffs and each of their respective

heirs, employees, parents, owners, members, partners, shareholders, agents, trustees, board

members, insurers, bond holders, attorneys, subsidiaries and affiliated entities, with prejudice,

from any and all claims, demands, causes of action, or liabilities, whether at law or in equity, that

any Rankell Defendant now has or ever had against any Plaintiff, arising from or relating to the

allegations in the Complaint filed in this action or the bringing of this action. Nothing in this

paragraph shall preclude Rankell Defendants from seeking to enforce the terms of this

Agreement.

26.     Rankell Defendants hereby acknowledge and fully understand that they

are releasing claims, demands, causes of action or liabilities, in law or equity, against Plaintiffs

that they may not know about which arise from or relate to the allegations in the Complaint filed

in this action, and that is their intent. Rankell Defendants expressly waive all rights they may

have under the law that are intended to prevent unknown claims arising from the allegations in

the Complaint filed in this action from being released and acknowledge that they understand the

13

significance of doing so.  This Agreement, however, is not intended nor should be understood as limiting Rankell Defendants from pursuing any claims that are unwaiveable as a matter of law.

## IX.  ADMINISTRATION OF AGREEMENT

27.     The United States District Court for the Eastern District of New York shall retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either party.

28.     The parties to this Agreement shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to filing a motion with the Court to enforce and/or modify this Agreement.

29.     It is agreed and acknowledged that no Party shall be regarded as a prevailing party for purposes of an award of attorneys' fees.

30.     The Rankell Defendants represent and warrant that no owner of any of the Buildings who is not a Principal Owner is involved in managing, maintaining or renovating any of the Buildings, and/or involved in the process of advertising, renting, or showing apartments or deciding whether and to whom apartments will be shown or rented.

31.     If any Plaintiff succeeds in moving to enforce any aspect of this Agreement against any Rankell Defendants due to such defendant's breach of this Agreement, then such defendant shall reimburse such Plaintiff for all costs reasonably incurred in connection with such motion, including without limitation reasonable attorneys' fees and the reasonable costs of any testing conducted by FHJC that is directly related to the breach at issue.  No Plaintiff shall commence an action for breach of this agreement or file a motion to enforce this agreement unless the Plaintiffs shall have first given the Rankell Defendants notice of the alleged breach or default and a fourteen-day opportunity to cure.

14

32.     Any correspondence relating to this Agreement may be sent to FHJC at its primary business address, which is currently 30-30 Northern Blvd #302, Long Island City, New York 11101, to the attention of Fred Freiberg or its then-current Executive Director, with a copy to Cuti Hecker Wang LLP, 305 Broadway Suite 607, New York, New York 10007, to the attention of Mariann Wang.  Any correspondence relating to this Agreement may be sent to Martin Rankell, LP and/or Robert Rankell, 1301 Kings Highway, Brooklyn, New York 11229, with a copy to Boyd Richards Parker & Colonnelli, P.L., 90 Park Avenue, 23rd Floor, New York, New York 10016, to the attention of Bryan Mazzola.

## X.   SEVERABILITY

33.     If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement.  The parties to this Agreement shall consult and use their best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## XI.  MISCELLANEOUS

34.     This Agreement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

15

Case 1:16-cv-05958-ARR-ST   Document 24   Filed 06/09/17   Page 16 of 26 PageID #: 123

35.   The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

36.   This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

37.   This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

_____   Dated: _____ 2017
Joshua Robinson, *Plaintiff*

_____   Dated: _____ 2017
John-Martin Green, *Plaintiff*

_____   Dated: _____ 2017
Inga Ballard, *Plaintiff*

_____   Dated: _____ 2017
Samuel Gates, *Plaintiff*

For:  FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____   Dated: _____ 2017
Fred Freiberg, FHJC Executive Director

16.

35.    The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

36.    This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

37.    This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original.  For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

_____      Dated: _____, 2017
Joshua Robinson, *Plaintiff*

_____      Dated: __6 · 7_____, 2017
John-Martin Green, *Plaintiff*

_____      Dated: _____, 2017
Inga Ballard, *Plaintiff*

_____      Dated: _____, 2017
Samuel Gates, *Plaintiff*


For:  FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*


By: _____      Dated: _____, 2017
       Fred Freiberg, FHJC Executive Director

16

35.     The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

36.     This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

37.     This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

_____     Dated: _____, 2017
Joshua Robinson, *Plaintiff*

_____     Dated: _____, 2017
John Martin Green, *Plaintiff*

_____     Dated: _____, 2017
Inga Ballard, *Plaintiff*

_____     Dated: _____, 2017
Samuel Gates, *Plaintiff*

For:  FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____     Dated: _____, 2017
    Fred Freiberg, FHJC Executive Director

16

35.     The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

36.     This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

37.     This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original.  For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

_____     Dated: ____ _____, 2017
Joshua Robinson, *Plaintiff*

_____     Dated: _____, 2017
John-Martin Green, *Plaintiff*

_____     Dated: _____, 2017
Inga Ballard, *Plaintiff*

_____     Dated: 06/08_____, 2017
Samuel Gates, *Plaintiff*

For:  FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____     Dated: _____, 2017
Fred Freiberg, FHJC Executive Director

16

Case 1:16-cv-05958-ARR-ST   Document 24   Filed 06/09/17   Page 20 of 26 PageID #: 130

35.     The parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

36.     This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

37.     This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or e-mail shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

_____     Dated: _____, 2017
Joshua Robinson, *Plaintiff*

_____     Dated: _____, 2017
John-Martin Green, *Plaintiff*

_____     Dated: _____, 2017
Inga Ballard, *Plaintiff*

_____     Dated: _____, 2017
Samuel Gates, *Plaintiff*

For: FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*

By: _____     Dated: __6/8_____, 2017
     Fred Freiberg, FHJC Executive Director

16

For: Martin Rankell, LP, *Defendant*

By: _____      Dated: _____, 2017
          (Signature)

_____
          (Print Name)

For: Robert Rankell, *Defendant*

By: _____      Dated: _____, 2017
          (Signature)


**AS TO FORM OF AGREEMENT ONLY:**

Dated: ___June 9_____, 2017          Dated: _____, 2017

CUTI HECKER WANG LLP                   BOYD RICHARDS PARKER &
                                       COLONNELLI P.L.

By: *Mariann Wang*
    Mariann Wang                       By: _____
    305 Broadway, Suite 607                Bryan Mazzola
    New York, New York 10007               90 Park Avenue, 23rd Floor
    (212) 620-2600                          New York, New York 10016
                                            (212) 336-8191
    *Attorneys for Plaintiffs*
                                            *Attorneys for Defendants Robert Rankell*
                                            *& Martin Rankell, LP and Robert Rankell*


It is so ORDERED this _____ day of _____ 2017


_____
HON. ALLYNE R. ROSS
UNITED STATES DISTRICT JUDGE

17

For  Martin Rankell, LP, *Defendant*

By: _____        Dated: ___JUNE 9___ , 2017
        (Signature)

ROBERT RANKELL
(Print Name)

For  Robert Rankell, *Defendant*

By: _____        Dated: JUNE 9 , 2017
        (Signature)


AS TO FORM OF AGREEMENT ONLY:

Dated: _____ , 2017        Dated: June 9 , 2017

CUTI HECKER WANG LLP              BOYD RICHARDS PARKER &
                                  COLONNELLI P.L.

By: _____               By: _____
    Mariann Wang                      Bryan Mazzola
    305 Broadway, Suite 607           90 Park Avenue, 23rd Floor
    New York, New York 10007          New York, New York 10016
    (212) 620-2600                    (212) 336-8191

    *Attorneys for Plaintiffs*

                                      *Attorneys for Defendants Robert Rankell*
                                      *& Martin Rankell, LP and Robert Rankell*


It is so ORDERED this 13th day of June , 2017

        /s/(ARR)
HON. ALLYNE R. ROSS

**EXHIBIT A**

**EQUAL HOUSING OPPORTUNITY POLICY**

We are committed to equal housing opportunity at all of our buildings, including our buildings located at 1695 East 21st, Brooklyn, New York, and 1214 Kings Highway in Midwood, Brooklyn, New York. Consistent with this policy, you must not do any of the following during the course of your work for our company:

1. Refuse to show, refuse to negotiate for the rental of, refuse to rent, or otherwise make unavailable or deny, an apartment to any person because of race, color, religion, sex, familial status, national origin, disability, lawful source of income, marital status, domestic partnership status, age, sexual orientation, alienage or citizenship status, lawful occupation, status as a victim of domestic violence or status as a victim of sex offenses or stalking, or military status (each is a "prohibited basis");

2. Discriminate against any person in the terms, conditions or privileges of renting an apartment or in providing services or facilities in connection with renting an apartment because of a prohibited basis, including stating or quoting different rents for the same apartments to people of different races;

3. Make any verbal or written statement, including advertising, with respect to the rental of an apartment that indicates any preference, limitation, or discrimination concerning a prohibited basis; and

4. Represent to any person because of a prohibited basis that any apartment is not available for inspection or rental when such apartment is in fact so available. An apartment is not available to show if an application has been submitted with a deposit to hold the apartment.

You should understand that any violation of this Equal Housing Opportunity Policy will lead to discipline, up to and including termination of your work with us.

18

**EXHIBIT B**

**ACKNOWLEDGMENT AND AGREEMENT**

I acknowledge that I have received and read the Equal Housing Opportunity Policy. I agree to comply with the terms of the Policy and with all federal, state, and local housing discrimination laws.

_____
DATE

_____
EMPLOYEE/AGENT NAME (PRINT)

_____
EMPLOYEE/AGENT SIGNATURE

19

**EXHIBIT C**

U. S. Department of Housing and Urban Development 



**EQUAL HOUSING OPPORTUNITY**

## We Do Business in Accordance With the Federal Fair Housing Law
(The Fair Housing Amendments Act of 1988)

### It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin

- ■ In the sale or rental of housing or residential lots
- ■ In advertising the sale or rental of housing
- ■ In the financing of housing

- ■ In the provision of real estate brokerage services
- ■ In the appraisal of housing
- ■ Blockbusting is also illegal

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:
    1-800-669-9777 (Toll Free)
    1-800-927-9275 (TTY)

U.S. Department of Housing and Urban Development
Assistant Secretary for Fair Housing and Equal Opportunity
Washington, D.C. 20410

Previous editions are obsolete

form HUD-928.1 (3-2003)

20

**EXHIBIT D**



**Discrimination may sound like this:**

*"Installing a ramp is expensive and would ruin the appearance of the building."*

*"I don't accept vouchers."*

*"I don't have to make that repair; undocumented tenants don't have the same rights as other tenants."*

*"They told me the apartment was available, but then when they saw I was black, they changed their mind."*

**The NYC Human Rights Law makes it illegal to discriminate against a resident or housing applicant based on**

 National Origin, Immigration Status, Religion

 Gender, Gender Identity, Gender Expression, Sexual Orientation

 Disability

 Occupation, Source of Income

 Marital or Partnership Status, Presence of Children, Age, Race, Color, Pregnancy, Status as Victim of Domestic Violence, Sexual Violence, and Stalking (as of 7/26/16)

**FAIR HOUSING. It's Your Right. It's Your Responsibility. It's the Law.**

 Commission on Human Rights | Department of Housing Preservation and Development

BILL DE BLASIO Mayor   CARMELYN P. MALALIS Commissioner/Chair   VICKI BEEN Commissioner

 NYCCHR  NYCHousing

If you think you have been discriminated against or if you want to attend a free workshop on the law, call 311 and ask to be connected to the NYC Commission on Human Rights. For more information, visit nyc.gov/fairhousingnyc

#FairHousingNYC

21